Thank you your honor. May it please the court I'd like to reserve two minutes for rebuttal. There are three main issues in this case, the first of which is ascertaining what evidence should have been in the record, admitted to the record and what inferences could have been drawn reasonably there from. The second issue is whether that admissible evidence described violations of Mr. Johnson's constitutional rights. And then the third issue is whether or not the constitutional violations described by Mr. Johnson's admissible evidence would have been obvious to reasonable corrections officers as early as 2009. With respect to the exclusion of evidence, our briefing is pretty clear on that and there are four categories of evidence that were excluded. The most important category of excluded evidence was Mr. Johnson's affidavit and the district court struck seven paragraphs from that affidavit for hearsay, seven paragraphs were struck for hearsay. And none of those statements would have been categorically inadmissible at trial. One of the rules that we would ask the court to consider would be clarifying the admissibility of summary judgment evidence, especially when there are objections. There are a handful of district court cases discussing what the expected likelihood needs to be before a self-serving affidavit. My question is, in terms of the evidence that was struck, is there any of that that you think is central to actually sustaining a claim at this stage of the litigation? The comments about the code of silence, some of the statements by the corrections officers saying that they would not or could not give statements to Mr. Johnson unless, well some of them categorically denied it and other ones said we can't give you those statements unless there is a felony or the safety of another inmate is in danger. And how would you see those admissible at trial? I think he could call the corrections officers themselves, four of them are named defendants, they're all identified. I think it's possible they wouldn't be available, but no less or more possible than the availability of plaintiff's presumptive witnesses, I'm sorry, defendant's presumptive witnesses. Can we get to the cardboard boxes? Yes sir. It's the issue that freaks me a bit. Okay. What evidence is there that Officer Silva acted intentionally? Only circumstantial evidence. Circumstantial is just fine. Judge McCune, what a wonderful opinion on employment discrimination. His statement saying that whites or anybody else could have as many boxes as Mr. Silva decided. If he did not include the words whites, I think it's a much tougher call, but one of our fundamental positions is that when a corrections officer will use race as an explicit reason for doing something, twice in Mr. Johnson's case, one with the telephone call and then one with the boxes, it's reasonable to ascribe racist tendencies to somebody who does that. That being said, if Mr. Johnson's evidence or most of it were admitted, there are six different events that I think we could consider mistreatment of Mr. Johnson, the first of which being the denial of boxes, the second of which being the threatened bunk transfer after he said he was going to file. Did that happen? I'm sorry, Judge? Did the transfer happen? No sir, it did not. So how does that state a cause of action if it didn't happen at the end of the day? Because it was a threat spurred by either Mr., well, it would be a cause of action if it were a threat spurred by Mr. Johnson's resort to legal process. So is it a retaliation claim there? Yes. So one of our positions is that there are two potential intents that could have been underlying much of Mr. Johnson's mistreatment. It could have been retaliation for his previous successful litigation and it could have been because he is African American. So what are the damages associated with the bunk transfer issue? Not much, Your Honor. I think one of the most difficult parts of this case is the harm that Mr. Johnson suffered is only modestly compensable at best. I think the greatest chance for compensation that he had was the Public Records Act that was decided to be untimely. And the reason for that being there were, between 2009 and 2011, statutory minimum damages for violations of the Public Records Act. Assuming the entire time period was at issue, he's looking at about $3,000 if the statutory minimum was granted. Now that's a little bit, I think it's a little bit tenuous. Maybe for you to grapple with is if he has some damages, maybe not lots, does he still have a claim? Yes. And I'm particularly concerned with, and I haven't found anything on point, but I'm very concerned with the idea that because the damages are de minimis, no constitutional violation. Especially if it is indeed a pattern, if what he alleges is true, then he is potentially hanging in the wind without real recourse. So to go back to the Public Records Act, which of the events do you see as falling within that? The bunk transfer, the boxes, or the phone call? The phone call. I think only the phone call. Maybe the boxes. I don't think that the record supports an argument that documents were taken from the boxes and he was prejudiced thereby. But I think that would be the next best, the next closest. So I had a specific question about the claims against Mr. Sager. If you assume that there was a foundation for potential affirmative discrimination because of the nature of the comments, you still need to show that there was disparate treatment of similarly situated individuals. So with respect to Mr. Sager, what is the evidence we look to on the disparate treatment? I think the most important evidence is actually evidence that I don't think the district court considered, and that would be the three affidavits that Mr. Johnson submitted from other inmates, white inmates, or actually I think the ethnicity of those inmates is unclear, and that's something that opposing counsel mentioned in his answering brief. His client has described them as being Caucasian, right? Yes. He's represented that to me. I don't think that's in the record. But is it in the record? That's the question. I don't think it is. I understand the difficulties of proceeding per se, but we have his statement, which is admissible on that point, but then we don't have any comparable treatment for someone identified of a different race. So how would we sustain that claim? I think we might. Okay. I think it is something that is uncertain. It's not clear from the record, and as Mr. Johnson was opposing summary judgment, I think the burden would have been on the defendants to say he could not show that he was treated disparately. I'd like to reserve the remainder of my time. All right. Thank you, Your Honors. And may it please the Court, I am Assistant Attorney General Tim Fulner, and I represent the defendant correctional officers in this case. Mr. Johnson's claims were properly dismissed because at the summary judgment stage, he failed to come forward with significant probative and admissible evidence to support his claims. The district court, based on that, properly concluded that Johnson had failed to show a triable issue on any of his claims against seven correctional officials. I'd like to first discuss the evidentiary issues which were raised by opposing counsel. The reality is that those evidentiary rulings were correct. The district court excluded evidence that would not have been admissible at trial based on hearsay, based on improper character evidence, but ultimately it wouldn't have mattered whether the court had considered those pieces of evidence because they would not have impacted and were not relevant to any of the claims made by Mr. Johnson. It would simply have not mattered. The evidence regarding a code of silence is not relevant to any claims brought by Mr. Johnson, and there was no prejudice. It would not have changed the result. Therefore, at most, it's harmless error in terms of the evidentiary rulings by the district court. In terms of the cardboard boxes issue, the testimony from staff in the district court demonstrated that there was a policy that prohibited cardboard boxes. That policy was also based on statements by the Monroe Fire Department to the correctional officers that cardboard boxes presented a fire hazard. Were other inmates allowed to have cardboard boxes? In the district court, Mr. Johnson presented... Could you start with a yes or no? Your Honor, other inmates were not allowed. Are you explaining why you can't respond with a yes or no? Were other inmates allowed cardboard boxes, yes or no? Yes, Your Honor. There was an exception to the policy that allowed an inmate to request an exception to the prohibition of cardboard boxes from the superintendent. The record demonstrates that Mr. Johnson never asked for such an exception. Additionally... These other inmates who say they were allowed boxes, did they petition the superintendent? The affidavits that Mr. Johnson... It's unclear, Your Honor. The affidavits from... You're going to get along a whole lot better if you start with a yes or no, or I don't know. Did those inmates petition the superintendent to allow cardboard boxes? The evidence suggests no, Your Honor. The affidavits from the inmates do not identify that issue at all. They're silent on that point. They're silent on that point, Your Honor, yes. However, in addition, those affidavits are silent on the point of whether Sergeant Silva himself allowed them to have boxes, whether he affirmatively told them you are allowed to have these boxes. That's the relevant inquiry in terms of an equal protection claim, whether this individual treated Mr. Johnson differently based on his race. There is no evidence that any white inmate was allowed by Sergeant Silva to possess boxes. There's no evidence in the record that suggests that. Other than the statement made to Mr. Johnson? The statement made to Mr. Johnson must be viewed in context, Your Honor, and I disagree that it demonstrates that white inmates were allowed to have boxes. Mr. Johnson's affidavit indicates that he went to Sergeant Silva's office to discuss these boxes that he'd received from the property officer. At that point, Johnson accused Sergeant Silva of favoring white inmates, and in response, according to Johnson, Sergeant Silva said, this is my unit, I'll run it how I want to, and white inmates or any other inmates are allowed basically to have boxes if I say so. Mr. Johnson himself injected race into the conversation, and Sergeant Silva was simply responding to Mr. Johnson's allegations about white inmates. But, you know, we're at the stage where the inferences are drawn against you, meaning the state, and couldn't it be inferred there, a reasonable jury could infer that what he's basically saying is that I run it how I want and whites get boxes and other people don't necessarily get boxes. Now, that may not be true, but that's certainly a legitimate inference that someone could draw from that evidence, couldn't they? No, Your Honor, because that's not the only piece of evidence we have in the record. On summary judgment, not every possible inference is drawn in the favor of the non-moving party. It's only reasonable inferences. Here we have staff, correctional officers, non-defendants, repeatedly telling Mr. Johnson that inmates were not allowed to possess cardboard boxes. Even when Mr. Johnson filed a grievance on the issue, the grievance coordinator said, tell me which inmates possess cardboard boxes so we can take those too. Repeatedly, Mr. Johnson was told he was not allowed to have these cardboard boxes, and he's not presented any evidence except for that one statement that Sergeant Silva allowed any individual white offender to have cardboard boxes. Is it your client's position that exceptions to the cardboard box rule are only allowed upon a petition to the institution superintendent? Yes, Your Honor, that was the policy at the time, that exceptions to the policy were only allowed upon a petition to the superintendent. Michael Silva has no authority to deviate from that policy. That is correct. At that time, Your Honor, he had no authority to deviate from that policy. Does he now? Yes, Your Honor, and the evidence in the superintendent's declaration indicated that after the incident with Mr. Johnson, inmates were allowed to retain one cardboard box for legal materials because the policy changed, so that was a change in policy, Your Honor. In addition, if it's correct that Silva said, in essence, I decide who gets cardboard boxes, that's what Mr. Johnson claims, he would have been acting contrary to the policy of the institution. He would have been misstating his authority, Your Honor. He would have been overstating his authority because he didn't have that authority. That's correct, Your Honor. That's not evidence of intent? I understand your client denies that, but you say that's not evidence of intent? No, Your Honor, I'm not saying that that's not evidence at all of intent. I'm saying the court, on a summary judgment motion, considers all the evidence, including uncontested evidence presented by the defendants, and draws inferences, but those inferences must be reasonable. Based on the record as a whole, in this case, the inference that Mr. Silva was deciding that white inmates could have boxes and Mr. Johnson could not because he was African American. Actually, my question applies to all inmates. If what Mr. Johnson's statement attributed to Michael Silva is true, Silva was saying he had the authority to decide who got boxes, be they white, African American, or otherwise, and apparently that's contrary to the policy of the institution at the time. Yes, Your Honor, you are correct, but that does not matter in terms of an equal protection claim because Mr. Johnson must show Sergeant Silva discriminated against him based on his race. That statement, potentially in violation of policy, does not demonstrate that Sergeant Silva was exercising his authority based on race or his lack of authority based on race. As Sergeant Silva indicated in his declaration, it was a daily battle to take these cardboard boxes from offenders. The unit had 220 offenders that were staffed by two officers. These officers could not confiscate every cardboard box in the unit, and defendants have not argued that they have. However, when they saw a cardboard box, they told the inmate they were not allowed to have that box, and in some cases they confiscated those boxes. It should also be noted that Sergeant Silva himself never confiscated any boxes from Mr. Johnson. He simply advised him of the policy that no boxes were allowed in the Monroe Correctional Complex. Additionally, in terms of the call- What is the level of the security of this institution generally? Your Honor, that's not on the record, and I don't know off the top of my head. Is it maximum? It is not, Your Honor. Is it minimum? Your Honor, again, I believe, I don't think there's anything in the record, and I'd be speculating as to what security level this was. We do know from the record that Johnson was transferred to this institution based on prior litigation that he had filed at his previous institution. That is in the record, isn't it? That is correct, Your Honor. My impression from reading that was that the result of the movement was from a higher level of security to a lower level of security. Is that correct? I don't know, Your Honor. They used the term privileged prison. Your Honor, there's a reference to privileged prison as well as to sex offenders, and the unit that Mr. Johnson was housed in is a privileged facility because sex offenders are housed there. It's where the sex offender treatment program resides in terms of the Washington Department of Corrections, and I believe that's what Mr. Johnson's referring to and why there are various references to him not being a sex offender. That's because the sex offender treatment program is in that unit. What about the Silva comment about he didn't care for legal beagles, which, of course, may have come from the fact that he knew that Mr. Johnson was transferred in there as a result of a legal settlement of prior cases. Why wouldn't that be enough at least to serve up for trial purposes whether or not there was retaliation on account of his prior exercising of his rights with respect to legal rights? Your Honor, I see I'm out of time. May I answer your question? It could be evidence of that, Your Honor, but that single statement is not connected to any adverse action that Sergeant Silva himself conducted. There's no evidence that Mr. Silva's statement related to a general dislike for legal beagles is connected to any of his treatment with respect to Mr. Johnson in this case. His actions were based on prison policy, which was that cardboard boxes were not allowed in the unit, and in terms of the HSR, that decision was based on the fact that the staff did not have a copy of the HSR, which is a health status report which identifies certain restrictions that it might have in terms of placement, for example, a lower bunk. The evidence shows that Mr. Johnson did not provide staff a copy of that HSR until he was going to be moved. At that point, the move was immediately terminated. Based on that evidence, there is no motivation that Mr. Silva was retaliating against him by moving him. Staff simply did not have a copy of that HSR. Thank you, Your Honor. Very briefly, on ER 180, I believe the affidavit by the inmate contained there denies that he ever had to ask for permission in response to one of your questions, Judge Hawkins. With respect to whether or not there is evidence in the record about whether or not other inmates had their boxes taken from them, I believe the affidavits at ER 177 through 84 all deny having any boxes taken from them, notwithstanding continued interactions with corrections officers. A good chunk of this case, I think, is, as the panel has made clear, disputed facts, and I think Mr. Johnson is entitled to have . . . he did submit enough evidence to get to a jury. It's not the most persuasive case, and I think for practitioners who are very familiar with pro se actions, probably approach it with a degree of skepticism. But nonetheless, the evidence in this case suggests very strongly that Mr. Johnson's constitutional rights were violated and he was deprived to stay in court. Thank you. Thank you. I would like to thank both counsel for your argument. Also, I'd particularly like to thank you, Mr. Davis, for serving as a pro bono attorney on appointment from the Ninth Circuit. It's always easier for us, and I know for the government as well, to have a brief that's well organized and you can respond to in kind. So we appreciate your briefing. We also appreciate the state's argument here this morning. The case just argued is submitted.
judges: Hawkins, McKeown, Gleason